# THE UNITED STATES, EX REL. BRIDE,

*v.*

# MACFARLAND.

---

TAXATION; TAX SALE CERTIFICATE; ESTOPPEL; STATUTORY CONSTRUC-
TION.

1. A writ of *mandamus* will not lie to compel the Commissioners of this
District to execute and deliver to the petitioner, the assignee of a
tax sale certificate, a deed conveying to him a certain lot, without
the payment of arrears of taxes due thereon, where the lot was sold
and the certificate issued to petitioner's assignor in April, 1898, and
the certificate recited that the sale was made in accordance with
the provisions of the act of Congress of February 28, 1898, and that
it was issued "subject to the payment of all arrears of taxes before
the issue of the deed," as required by that act, although the levy
or assessment of the taxes for which the sale was made was under
the act of Congress of March 3, 1877, and the amendments thereto,
which contained no such provision as to payment by the purchaser
of arrears of taxes as a condition precedent to the execution and
delivery to him of a deed.
2. Where the later of two statutes, which are not in express terms re-
pugnant, covers the whole subject of the first, and embraces new
provisions plainly showing that it was intended as a substitute,
it will operate to repeal the earlier statute, the presumption being
that it was not the intention of the legislature that two or more
acts relating to and covering the same subject-matter should remain
in force together; but all such acts being in *pari materia* must be
construed together in order to arrive at the legislative intent.
3. The office of the proviso of a statute is, generally, intended to restrain
the enacting clause, and to except something which would otherwise
have been within it, or in some measure to modify the enacting
clause.

No. 1046. Submitted March 8, 1901. Decided April 2, 1901.

HEARING on an appeal by the relator from an order of the
Supreme Court of the District of Columbia dismissing a
petition for a writ of *mandamus* to compel the Commission-

ers of the District of Columbia to execute and deliver to the petitioner a deed of property purchased at a tax sale. *Affirmed.*

The COURT in its opinion stated the case as follows:

This appeal is from an order of the Supreme Court of the District of Columbia refusing the writ of *mandamus* to the Commissioners of said District, requiring them to execute a deed for lot No. 9, with improvements, in square 31, in Washington city, sold at a tax sale, and to which deed the relator alleges himself entitled as assignee.

The facts of the case are undisputed, and they appear to be simply these, as disclosed by the petition and answer:

On April 6, 1898, the collector of taxes of the District of Columbia sold at public auction at his office, in pursuance of a public notice by advertisement, duly published, and in accordance with the provisions of an act of Congress entitled " An Act in relation to taxes and tax sales in the District of Columbia," approved February 28, 1898, lot 9, with improvements, in square 31, to Robert Y. Slater; and thereafter, on the 20th of April, 1898, issued a certificate of sale to the purchaser. This certificate recites that the lot was sold after advertisement, in accordance with the provisions of the act of Congress approved February 28, 1898, and that it was issued " subject to the payment of all arrears of taxes before the issue of the deed," as required by the provisions of said act. This certificate was received and accepted by Slater, the purchaser, who thereafter undertook to assign the same to J. W. Thompson, said Thompson thereafter undertaking to assign the same to Cotter T. Bride, the person on whose relation this proceeding was instituted.

More than two years having elapsed since said sale, and said property not having been redeemed, as prescribed by the provisions of said act of Congress, Cotter T. Bride applied to the Commissioners of the District for a tax deed. The Commissioners refused to execute and deliver the deed unless the petitioner, the assignee, should pay all taxes as-

sessed against said property, according to law, including taxes
for the year for which said lot had been sold and bought in
by the District of Columbia, which remained unpaid. The
petitioner declined to pay such taxes, and thereupon filed
a petition for a *mandamus* against the Commissioners, to
require them to execute and deliver a deed conveying to him
a title in fee-simple to said lot, without such payment of
prior taxes due thereon.

There was filed with the petition, as exhibits, the tax cer-
tificate, the deed which the petitioner tendered for execution,
and a notice from the Commissioners to the petitioner that
they were willing to execute the deed, provided the arrear-
ages of taxes should be first paid.

The Commissioners, in their answer, while not controvert-
ing the facts as stated in the petition, aver that their demand
and requirement, as a condition precedent to the right of the
petitioner to receive the deed, is based upon the provision
of the act of Congress of February 28, 1898, under which,
as they allege, the sale was made; that provision declaring
that no deed shall be issued until all taxes and assessments
appearing upon the tax books against the property are paid,
with penalties, etc.

Upon this state of facts, the court below overruled a mo-
tion for a peremptory writ of *mandamus,* discharged the rule
to show cause, and dismissed the petition; and it is from
this order that the appeal is taken.

*Mr. O. B. Hallam* and *Mr. W. M. Hallam* for the appel-
lant:

The sole question that arises is whether the rights of the
parties are to be governed or determined by the act of
March 3, 1877, or that of February 28, 1898. We claim
that the act last named is so manifestly *in futuro,* and relates,
by its language, so clearly to taxes thereafter in arrears that
there can be no construction given it that will apply it to
taxes already in arrears. That is to say, giving it its
utmost effect as authorized by its language, it could only

reach taxes in arrears for the fiscal year ending June 30, 1898.

All rules of construction of statutes necessitate the court's ruling that the opening clause of this act or statute make a limitation of all subsequent provisions to the class of sales referred to in that opening clause. In other words, that it cannot be properly held that the proviso applies to sales made for taxes already in arrears at the date of the passage of the act. Sutherland on Stat. Construc., Secs. 268, 325, 362, 463; *Parlington* v. *Attorney-General,* L. R. 4 H. L. Cases, 122; *Larrabee* v. *Talbott,* 5 Gill (Md.), 426; 46 Am. Dec. 637; 23 Am. & Eng. Encyc. of Law (1st ed.), p. 218, n. 2; Potter's Dwarris, 221; 23 Am. & Eng. Encyc. of Law (1st ed.), p. 447, n. 2; 23 Am. & Eng. Encyc. of Law (1st ed.), p. 448; *U. S.* v. *Crawford,* 6 Mackey (D. C.).

The opinion in the last-named case, we are aware, has, to some extent, been inferentially overruled by this court in *Chase* v. *U. S.,* 7 App. D. C., but not for reasons conflicting with the general doctrine laid down; which seems to be in harmony with that laid down in the sections in Mr. Sutherland's work, above cited. See, also, *Gilbert* v. *Morgan,* 18 D. C. 296; *King* v. *D. C.,* MacA. & M. (D. C.) 36.

*Mr. Andrew B. Duvall,* Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg,* assistant attorney, for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The levy or assessment of the taxes for which the sale was made was under the act of Congress of March 3, 1877, and the amendments thereto, and was duly listed and published as required by that act; and the whole question in this case is, whether the sale for the arrearages of taxes so assessed and listed and published, was made under the act of March 3, 1877, or under the subsequent act of Congress of February 28, 1898, relating to taxes and tax sales in the District of Columbia; the prior act of 1877 not requiring, as does the

act of the 28th of February, 1898, the purchaser at the sale to pay the prior arrearages of taxes as a condition upon which he may be entitled to receive a deed.

By the act of March 3, 1877, and the amendments thereof, full provision was made for listing, advertising and sale of property of delinquent taxpayers; and under that law the property in question was duly assessed and listed, and publication made, as thereby directed, for the taxes due for the fiscal year ending June 30, 1897.

Subsequently, Congress, by the act of February 28, 1898, entitled " An act in relation to taxes and tax sales in the District of Columbia," provided a full and complete system for the listing, advertising, and sale of property of delinquent taxpayers, incorporating therein most of the material parts of the pre-existing law, but with some modifications and additions thereto, and thereby provided for the sale of all property of delinquent taxpayers. And by the eighth section of this latter act of 1898, it is declared " that this act shall take effect from and after its passage; and all acts or parts of acts inconsistent herewith be, and the same are hereby, repealed." As already stated, this act was approved February 28, 1898.

It is argued by the appellant that though the sale was made on the 6th of April, 1898, after the passage of the act of the 28th of February, 1898, the terms of the first section of the act of 1898 are that the assessors of the District of Columbia shall prepare a list of all taxes on real property in said District subject to taxation, on which said taxes are levied and in arrears, on the first day of July, of each year *hereafter;* and that, therefore, by its terms, the act does not and could not apply to the assessment and listing of the taxes due for the fiscal year ending June 30, 1897; and, consequently, the tax sale of the 6th of April, 1898, was not provided for, and is not within the provisions of the act of 1898. But if this contention were conceded, the tax sale in question would be simply a nullity, for the want of power to make it, unless it could be shown that the act of Congress of March 3, 1877, still remained in force and operation at

the time of the sale on the 6th of April, 1898, notwithstanding the act of February 28, 1898. But this contention of the appellant, we think, is not well founded for several reasons.

In the first place, the act of 1898 is intended as a general comprehensive system of procedure for the listing, advertising, and sale of property for taxes. It is not intended to be a mere auxiliary method prescribed to a pre-existing method. It was intended to take the place of a system previously prescribed in which it was supposed there were defects that required legislative change in detail, but not in the system itself. The act of February 28, 1898, embodied nearly all the provisions of the pre-existing acts upon the subject, with certain additions and modifications. It was intended to take the place of the system that had prevailed with the additions and modifications made thereto; and that being the case, it plainly comes within the principle that where two acts, though not in express terms repugnant, yet if the later act covers the whole subject of the first *and embraces new provisions,* plainly showing that it was intended as a substitute for the first, it will operate as a repeal of that act; the presumption being that it was not the intention of the legislature that two or more acts relating to and covering the same subject-matter should remain in force together. *District of Columbia* v. *Hutton,* 143 U. S. 18. But all such acts being in *pari materia* must be construed together, in order to arrive at the legislative intent. "Where," as said by Lord Mansfield, in *Rex* v. *Loxdale,* 1 Burr. 445, 447, "there are different statutes in *pari materia,* though made at different times, or even expired, and not referring to each other, they shall be taken and *construed together,* as one system, and as explanatory of each other." See, also, the case of *Rogers* v. *Bradshaw,* 20 Johns. 735, 744.

The act of February 28, 1898, was, manifestly, intended by Congress simply as a substitute for all preceding legislation upon the subject of the method of proceeding for the collection of taxes and of making tax sales of the property of delinquent taxpayers. It was clearly not the intention of

Congress, in passing the act of 1898, to strike down and nullify all that had been done under the act of 1877 and its supplements, as preliminary to proceeding to sale of the property upon which the taxes were due prior to the passage of the act of February 28, 1898. Congress, by the passage of the latter act, did not certainly intend to deprive the District of all remedy for the collection of taxes due prior to the date of the act of 1898. The latter act, therefore, was simply a re-enactment of pre-existing laws with modifications and enlargement of powers to make them more effective. But, in doing this, it did not in any manner nullify what had been done under the pre-existing acts upon the subject. The act of 1898 became applicable to the proceeding that had taken place under the act of 1877 and its supplements, as if it had taken place under the act of 1898, and the remedy thereby was made a continuing one; and though the prior acts of Congress upon the subject were in effect repealed, the proceedings commenced under the prior acts were authorized to be pursued and perfected under the last act upon the subject, that of 1898.

The terms of the first clause of the first section of the act of 1898 might, if they stood alone, admit of some questionable construction. But that clause of the statute must be construed in the light of and in connection with all the other provisions of the statute, as construed in *pari materia* with the provisions of former statutes. Section 3 of the act of 1898 contains several *provisos;* the first of which is "that no deed shall be issued until all taxes and assessments appearing upon the tax books against the property are paid, with penalties, interest and costs, including taxes for the years for which the District purchased the property at tax sale."

It is a well-settled principle, that the office of a *proviso* in a statute is, generally, intended to restrain the enacting clause, and to except something which would otherwise have been within it, or in some measure to modify the enacting clause. *Voorhees* v. *Bank U. S.*, 10 Pet. 449, 471; *Wayman* v. *Southard*, 10 Wheat. 1, 30.

But, without making any special application of this principle, we think, in this case, there is no ground for the mandamus. The sale of the property to Slater was professedly made under the act of February 28, 1898, and he dealt for it as having been rightfully sold under that act. The certificate which was given to the purchaser, Slater, expressly recites that the sale was made in accordance with the provisions of the act of February 28, 1898, and was made subject to the payment of all arrears of taxes before the deed was demandable. The certificate was accepted by the purchaser without question or protest, and neither he nor his assignees made any objection thereto until after the lapse of more than two years, when the assignee sought to obtain a deed for the property from the Commissioners, without the payment of the prior arrearages of taxes. Under such circumstances, clearly, no question can be made by the purchaser of the property, or his assignee, as to the authority under which the sale was made; and by making such question avoid the liability under which the party to whom the sale was made and the certificate given was enabled to become the purchaser. His liability for the arrearages of taxes due upon the property was a material part of the consideration for which the certificate of purchase was issued; and no assignee is entitled to stand in a better situation in respect to the rights under that certificate than the original purchaser.

In no view of the case, therefore, was the relator entitled to the writ of mandamus, and the court below was right in refusing the writ, and in dismissing the application therefor. The order appealed from is, therefore, affirmed, and it is so ordered.                    *Order affirmed.*